Case number 17-3026, Cynthia Boyd et al. v. Kingdom Trust Company et al. Argument not to exceed 15 minutes per side. Mr. Davies, can you please lead us through the case? Good morning, Your Honors. May it please the Court. My name is Scott Davies, and I represent a class of individuals represented by Cynthia Boyd and Tom Flanders, the plaintiffs and appellants in this matter. We're asked that the District Court's decision dismissing our case pursuant to Rule 12b-6 be reversed for, really, there's two fundamental issues here. First, the statute itself is very broad, very remedial, and it doesn't have any requirements other than the defendants participated in, aided in any way in the sale of these illegal securities. The District Court found that we didn't allege other than normal banking activities. Well, first of all, there's no normal banking activities exception in the statute. The practical effect, although the defendants take issue with us calling that an exception, the practical effect of the District Court's ruling is to create that exception if it stands. And the reason is this. There is no evidence in this case. There's only pleadings. And so if you look at the complaint and simply determine that whatever is alleged in the complaint is, in fact, nothing but normal business activities, then the effect of that is to create an exception to the statute that doesn't exist, that the General Assembly didn't put in. And so if we look at what is alleged in the complaint, the defendant's position, and the District Court agreed, was that all we've alleged is normal banking activities. Well, that's fundamentally not true. There is a litany of activity alleged in the complaint that involves directly the defendants in this matter. This was a Ponzi scheme perpetrated by Mr. Apostolos, whereby he would find individuals and have them transfer their 401Ks to the defendants as self-directed IRA custodians. At that point, he would issue promissory notes. They're basically taking the cash, putting the promissory note in the hands of the defendants, and the money disappeared as part of this Ponzi scheme. In order to facilitate all of those transactions, the defendants worked directly with Mr. Apostolos. And here's how, and it is alleged in our complaint. Number one, the forms that need to be filled out by all the individual investors, we allege, Mr. Apostolos helped fill out all those forms with each of the individual investors, him or his companies. Secondly, and something that I'm not sure comes out entirely in the briefing, there were direct contractual relationships with these defendants between Mr. Apostolos and or some of his companies that didn't include the investors that were needed and necessary requirements in order to facilitate these transactions. If you look at Exhibits 2 and 3 in our complaint, those are some examples. And we believe there will be more. And fundamentally, we've been deprived of the opportunity to do any discovery and to find all of this information that we believe exists. The agreements that we did attach, one is a contract between Mr. Apostolos and Kingdom Trust that says you're going to meet certain requirements as the borrower on this promissory note. It doesn't include the individual investor whose money was taken in this scheme. The second is a servicing agreement between Kingdom Trust and a company, CNA, I believe, that is signed by Mrs. Fairchild, which, it's public record, was part of this scam and worked for Mr. Apostolos. That agreement, again, is independent of the individual investors. And so this idea that there was no legal relationship between Mr. Apostolos and the defendants is simply false, and we allege that in our complaint. And at this stage, to say that all of this was just normal banking activities and that is an exception to revised code 170743 is both a factual error and, frankly, a legal error. So did the complaint itself allege this relationship between Apostolos and the defendants, or is it through these exhibits that were attached? Your Honor, the complaint itself alleges that the defendants were fundamental to these transactions, but for their inclusion in these transactions, it could not have happened. It references specifically a list of all the documentation that was required in order to consummate these transactions. That list includes the two examples that are attached as exhibits. One of them, I believe, is a servicing agreement, and the other is an unsecured promissory note authorization form or something to that effect. So, yes, absolutely. Paragraph 55, I believe, alleges that. And, again, it summarizes that but for Pensco and Kingdom Trust and all of the defendants' involvement in these, the transactions couldn't have happened. If you look at that relative to what the statute says, the statute says as long as you aid or participate in any way in the sale of illegal securities, then you're liable if the investor rescinds a transaction, which is what this case is about. So there's no scienter requirement. I can see how the defendants aided in the purchase, but I'm not sure I see how they aided in the sale. Well, two responses to that, Your Honor. First is the sale, I think you have to look at it as a transaction. I don't think it's – Well, the statute doesn't say in the transaction. It says in the sale. That's correct. I'm trying to see how these defendants aided in the sale or the contract for sale. Well, they had contractual agreements with Mr. Apostolos, who was the seller of the investments. So those contractual agreements were a prerequisite in order for them to fund the sale. So insofar as their relationship was with Mr. Apostolos, they certainly are on the seller's side of the transaction. There's also no question that they're on the purchaser's side as well, being that they're the ones that took control of all the actual investment tools and the illegal securities in this case. So I think they're on, frankly, both sides of the equation, which I believe, Your Honor, is why we have to look at this as a sales transaction and not whether they're on the seller's side or the purchaser's side. At this point in the litigation, there's simply no way to make the factual determination the district court did, which was necessary for them to dismiss our case. This matter should be reversed and we should be allowed to conduct discovery, given the fact that we've established that the defendants, no question, participated and aided in the sale of these illegal securities. So who are the purchasers of these securities? Is it your clients, Boyd, et cetera, or is it someone else? Your Honor, I think the nominal purchaser in these are the defendants, the self-directed IRAs, because that's the way the paperwork was set out. As a practical matter, though, it's all of the individual investors' money that was used to fund these sales. And so if you exclude this case because they weren't purchasers, then effectively what you've left their recourse up is hoping that somehow the defendants will sue themselves under this statute. I think that's a practical, if not legal, impossibility. So I would say that the investors, the individual, my clients, are the persons who were purchasing these illegal securities for purposes of analyzing the statute. You haven't addressed this Wells Fargo decision. Would you take a moment to do that? That case seems to recognize, whether you call it an exception or not, this whole normal banking activities exception or not caught within the scope of the statute.  First, fundamentally, that was a decision pursuant to Rule 56. It's not a 12B6 decision. So after evaluating all the evidence, the court said that there was not enough. Because it was normal banking activities, it was not enough to show that they participated and aided in the sale. From a factual perspective, it's a much different case. Amerifirst was a defendant that got dismissed on summary judgment in that case. And what they did was provide loans to individuals and take a mortgage on the individual's house. Those individuals then used the money to purchase illegal securities from the defendant in that case. That's not what we're talking about here. What we're talking about here is the person who perpetrated the scheme brought together the individual investors and the defendants in this matter. And the defendants actually took custody and control of the security. They didn't provide money to the investor who then, in turn, paid it to somebody else. They actually got the security, put it in their coffers, if you will, and purchased the security. But not to their own account, but to the benefit of your client and all of the people in the class action. That's correct. So your claim is not that Kingdom or the others actually purchased these securities themselves. I mean, could they, in their relationship with the investors, with Boyd and others, when they were told to purchase these things, could they have said, no, man, we're not going to do that. That's a bad idea. No, I don't think they could have. I think that the paperwork involved was either at the direction of my clients or Mr. Apostolos and using power of attorneys would make these purchases. I don't think that prohibits them from being liable under the statute. Because at the end of the day, they also had contractual relationships with Mr. Apostolos in the form of authority for promissory notes and servicing agreements. So they were on both ends of the transaction. And I think, again, it goes back to where's the stage of this litigation. We've not been able to conduct discovery. We have alleged enough there for us to continue that discovery. And that relationship just hasn't, we haven't had the opportunity to flesh it out. So we provide an alleged in the complaint what we know of that certainly lends itself to the involvement in the sale of these illegal securities by the defendants. And we should be allowed to proceed at this point to conduct discovery and not be dismissed summarily as a motion to dismiss. Has the Ohio Supreme Court ever said anything about this normal banking practices exception? Your Honor, off the top of my head, I'm not sure the Ohio Supreme Court has. There's a lot of appellate court decisions. And all of those decisions are Rule 56 motions, which I think is fundamental to this question. But I also, all of those decisions talk about the actual activity, which we haven't had the opportunity to develop, and what that is relative normal banking activities. At this point with the record in the case, I don't think there's a definitive list of here's what all the normal banking activities are to which we can compare what was alleged in the complaint or what was actually done because we don't know those things, Your Honor. I see my time is up. Thank you. Okay. Thank you, Counsel. Thank you, Your Honors. Jahan Raisi on behalf of Appellee Petsco Trust Company, and we're going to be splitting our time between the two appellees. Your Honors, I first want to touch briefly on I think the main point that's being made here, and that is that there is alleged some sort of relationship between appellees and Mr. Apostolos. That's not alleged in the complaint. It's not an argument that's ever been made before. There is no allegation when you go line by line through the complaint of any sort of relationship between these parties. That is not factually correct. What is the case, because this is the normal course for a custodian, is that we act as trustees and we stand in the shoes of the purchasers in this case. And so that, yes, there is a note between the company involved here, and it will have the name of, for example, Pensco on it. That is the only contract, but that is us acting as a trustee standing in the shoes of the buyer. There is nothing else here, no alleged relationship between Mr. Apostolos, the seller of the securities, and the appellees here. Let me step back a moment. Pensco, both appellees, are banks under state law. Pensco is regulated as a bank by the state regulators. It's recognized under Ohio law as a bank. What it does and what it does not do is prescribed by the Internal Revenue Code. That sets forth what a custodian of an IRA must do. IRC 408, and the Code of Federal Regulations underneath that. It's 26.1.408-2. What a custodian does, what is normal and customary for a custodian, is set forth in the Internal Revenue Code. Now what we have here is a complaint that actually alleges what a custodian does in the normal course. I believe it's paragraphs 38 through 40. It then alleges, as to these particular appellees, that they did exactly what a custodian does in the normal course of business, as they themselves alleged in the complaint. The complaint also cites to the Securities and Exchange Commission release that explains what an IRA custodian does. So we have before the district court their own pleading as to what the standard a custodian is held to and then what these custodians did. The two are identical. We have a standard and then the conduct alleged in no way goes beyond those banking activities required by the Internal Revenue Code and they themselves alleged are done in the normal course. I guess I understand the plaintiffs argue that they should be able to survive a motion to dismiss and establish in the course of discovery, perhaps pursuant to the motion for summary judgment, what of the various activities in relationship were in the normal routine and which were not. So I think Mr. Davies had pointed to paragraph 55 of the complaint and exhibits and at least got the sense that the argument was that maybe that arrangement was outside the normal routine activities of a custodian in this sort of a situation. They didn't use the words outside the normal routine activities? No, Your Honor. Is that what's failing here? So two things. First of all, this is a motion to dismiss and whenever someone says, well, we need discovery, my judge in training and tenant go up and say, well, wait a minute, because you're pleading can't survive a motion to dismiss, you need more facts to plead. I'll come back to that in a moment. As far as the specific allegations of forms, again, I will say that as a custodian under the Internal Revenue Code, we stand in the shoes of the buyer as trustee and have to have the same documents that a buyer would have, which are exactly the documents that they've alleged were created. I would also note that they specifically allege a contractual relationship between Pensco and in the case of Mr. Flanders, one of the appellants. That contract was before the district court and specifically enumerates the type of documents that will be required in order to effectuate the custodial relationship and custody the particular asset this customer was buying. So, no, I think their own allegation sets forth what the bar is, what the standard is, and like I said, when they turn to alleging specific facts related to these particular appellees, the two are identical. You can put a mirror up and it is what it is. Now, related, Your Honor, is this question of summary judgment versus motion to dismiss, which I don't think is a distinction with any substance, it doesn't matter the procedural posture for a court to articulate what the legal standard is under this particular statute for participating with the seller in the sale or aiding the seller in the sale. Be it a motion to dismiss, be it a summary judgment, the standard is the same. In your view, let's say with the, sorry to interrupt, but let's say with paragraph 55, if the complaint had alleged in some fashion that with this relationship between Mr. Apostolos and Kingdom Trust and maybe also other paragraphs as to Penske, that there was something inappropriate about the relationship, some, I don't know if you want to call it side dealing, self-dealing or something of that nature, that might be sufficient to take, be sufficient allegations to survive a motion to dismiss for failure to state a claim, wouldn't it? I mean, that's not the case here. It's not the case here, Your Honor, and if they allege. Arguably, it's not the case here. I don't see those words in this complaint. However, Your Honor, under your hypothetical, if they alleged something akin to actual knowledge of the wrongdoing and active participation with the seller in that wrongdoing, then I think we have a different debate. That's not this case. This case is Wells Fargo pure and simple, which is the most recent articulation of this legal standard from the highest court that's addressed it in Ohio, and it's frankly the most comprehensive survey of the law and most akin to our situation. Why? Because there you have a financial institution that is arguably working for the buyer as we were here. We were brought to this by the buyer, not by the seller. And in that situation, the facts are actually more involved with the seller than we have before the court today. What I mean is, in that situation, there was an actual referral agreement between the seller and the person at the financial institution in the Wells Fargo case. The person at the financial institution proactively telephoned the investor to solicit the mortgage. The mortgage was absolutely key to that investment because the nature of the investment was taking a mortgage, transferring the funds to the investment. The investment then made the payments on the mortgage. It was a mortgage-based investment. And in that case, the court of appeals for the state surveyed the case law and said, well, wait a minute. They're only providing ordinary commercial activities that the financial institution provides. That does not constitute participating with the seller in selling this investment. And I note that, and I wrote it down, although I don't remember, there's probably a dozen cases that in various ways address this question of what does participation mean. And in every single one of them but the Wells Fargo case, the participation is with the seller of the investment, which is the point of this law, that if you participate with the seller in doing something to have that seller's transaction happen from the seller's side, you can be responsible. There is this document that is attached which seems to be linking the seller with one or another of the defendants. That's a kingdom trust document. I can't speak to it. But like I said, it is correct that there will be documents linking the investment with the custodian because there has to be. The Internal Revenue Code requires the custodian to hold legal title to the asset. An individual cannot hold it in their own name. Therefore, in the case of a note, there has to be a note with the trustee's name on the note. That's different than some sort of an economic relationship, a partnership, an agency agreement, something where we're in business together with the seller of the securities. That would be a very different case. And who brought the individual to Pensco's attention? The individual themselves. Not Apostolos? No, Your Honor. This is a situation where just like if you were to open an account with Merrill Lynch or whoever, you fill out the paperwork, you take it to Merrill Lynch, and they open your account. That's exactly what happened here. My time is up, and I don't want to impinge on it. One last question, if I could ask. Thank you, Your Honor. Is there a Ohio Supreme Court case that you would point us to at all? Your Honor, I'm not aware of the Supreme Court addressing this issue. The Wells Fargo case v. Smith is the highest court that has squarely addressed this particular fact pattern and the particular issue of the ordinary commercial activities. I would note that the district court also in a subsequent ruling against another party, PNC Bank, did issue another opinion dismissing the case against PNC that addressed this concept of an exception. And the district court specifically held that nobody is calling this an exception. This is a definition of what it means to participate with the seller. And I understand that this is a remedial statute, but that doesn't mean it's some sort of magic solvent that dissolves all of the years of precedent in this area, and quite obviously the courts have circumscribed the reach of this particular statute in these circumstances. Thank you, Mr. Bracey. Thank you. Ms. Goins, you'll have your full allotted read upon time. Thank you, Your Honor. So I disagree with my learned co-defendant's counsel at one point. I do not believe that the custodian stands in the shoes of the investor. Instead, what the actual construct is that the purchase is made by an individual retirement account. And the defendants, as custodians, just like a trustee in any kind of a trust, purchase the investments at the behest of the person who set up the account, in this case the plaintiffs. And then the purchase is actually made by the retirement account, by the custodian who is the person acting for the retirement account. And that, in fact, is what the complaint says throughout. We're dealing here, Your Honor, with a statute that has certain elements, and it's our contention that the complaint does not meet those elements. First is that it extends certain rights only to purchasers of securities. And we don't believe that the plaintiffs here are purchasers, because, as I said, the purchasers are their individual retirement accounts. If they were to purchase directly, they would not be able to get the tax benefits of these investments. And so that's why they're set up that way. It's a construct established, as people said. How can they be considered as purchasers, even if technically it's the IRA that's purchasing it, but the IRA is for their sole benefit? This is, Your Honor, a statutory claim, okay? And we do have a case by an Ohio appellate court, Smith v. Waite, in which the court says directly that Section 1707.43 can create no claim for relief in a plaintiff who does not allege that he personally was the purchaser of any of the securities involved. Now, the Smith case is a different construct. I admit it's not a beneficial ownership situation. But the fact is that the plaintiff here chose to file only one claim. It was a statutory claim, and he is constrained by the statute. The statute recognizes that a sale-purchase transaction has two sides. On one side of the table, we have the purchaser. On the other side, we have the seller. All of the allegations about Kingdom Trust are about Kingdom Trust as a purchaser. And the complaint is replete with this. It says, Kingdom Trust purchased. Kingdom Trust was the purchaser. And so in its custodial capacity, on behalf of the IRA, Kingdom Trust was the purchaser. Of course there are agreements between the seller and the purchaser. Those are the agreements that plaintiff is pointing to. If you were to read the statute the way plaintiff wants you to read it, there would be a cause of action against any purchaser. And how does that make any sense? I mean, you've got two sides to a transaction here. Yes, the statute is a remedial statute. Yes, it is broadly read. But, in fact, it is not read as broadly as plaintiffs would have you believe. Mere involvement in the transaction, which is really what they're positing here. They're saying because you're involved on behalf of the IRA as the custodian making the purchase, that you're involved in the transaction. And Your Honor was perfectly correct. The statute doesn't talk about involvement in a transaction. It talks about participating in and aiding the sale. And we've discussed each one of the cases, each one of the Ohio cases, that talks about this in our brief at pages 15 through 16 and 21 through 22. And every single one of those cases has more involvement, considerably more involvement. Could Kingdom Trust have purchased these particular securities without being told to do so by the plaintiffs? No, Your Honor. Why aren't the plaintiffs just as much involved in this purchase as Kingdom Trust and Pensco are? Good question, Your Honor. I mean, it's our position that this was an investment that the plaintiffs chose to make. It's clear from the complaint they knew Mr. Apostolos before they ever knew anything about Kingdom Trust. They decided to invest with Mr. Apostolos. That's what the complaint lays out. And in order to get a tax benefit from this investment, they opened an IRA with a custodian. Could have been Kingdom Trust, could have been Pensco, could have been one of the 25 John Doe's that are mentioned in the complaint. So there were a number of choices that the plaintiffs had. You know, the plaintiffs were certainly the ones driving the bus here. And they were the ones that made the decision that they wanted to purchase securities from Mr. Apostolos. But in order to get certain tax benefits, they did it through a self-directed IRA account with Kingdom Trust in our case. And as a result of that, they were not directly the purchaser. And the law, the Internal Revenue Code is very clear that if the investor, the beneficial owner, exercises any control over the IRA account after the purchase is made, they lose their tax exemption. So clearly, you know, the money is put into an IRA account. The direction is given to the custodian to make this investment. And that's just the way it is set up. And it's set up that way so that the investor can get a tax benefit. But I don't think that makes the investor the purchaser for the purpose of the Ohio statute. The Ohio statute uses a very specific word, purchaser. It doesn't say beneficial owner. It doesn't say somebody who's involved in the transaction in some way. So you're saying that Kingdom Trust is, in fact, the purchaser? Yes, Your Honor. Okay. Yes, Your Honor. So my concern, which is what I had assumed all along, but my concern is then looking at the actual language of the statute, what is the difference between aiding in the sale or the contract for sale and aiding in the purchase or a contract for purchase? Well, the big difference is there's no liability on the purchaser side. Under the statute? Under the statute. If there's a distinction between aiding in the sale or the contract for sale and aiding in the purchase or the contract for purchase. Correct. Correct. I mean, the statute sets up a construct that the plaintiff is the purchaser, the claimant has to be the purchaser, and the only possible persons with liability are either the seller himself or anyone who participated in or aided the seller in the sale. Who would do that? What would be an example of someone participating in or aiding in the contract for sale? What you have in the case law is a broker who brings the parties together, someone who knows about the scheme and still does their, you know, whatever their little bit is. They're an underwriter, for instance. You have any number of possible, let me see if I can find specifically. Except for all the ones who are accepted under the statute. Right. But why isn't Kingdom Trust equally assisting, especially if you look at paragraphs 54 in the complaint, which seem to be tying Apostolos and Kingdom Trust together? Well, Your Honor, what that paragraph says is that Mrs. Boyd opened an account with Kingdom Trust at Apostolos' direction. This doesn't tie Apostolos to Kingdom Trust. It ties Mrs. Boyd to Apostolos. And it ties Mrs. Boyd to Kingdom Trust. But it doesn't tie Apostolos to Kingdom Trust. So, you know, just because Apostolos says, okay, you can make this investment, and this is, in fact, what happens in these Ponzi schemes. I'm out of time here. Do you want me to continue? You may finish. What happens is these fraudsters, they call them, go to someone and say, you've got this big retirement account. I can make you 15% or 20% even though the market is, you know, 5% or 7% or whatever. And it will be tax-free because you can do it through an individual retirement account. And the legislature, the Congress, in its infinite wisdom, has set up this vehicle and this business that is in place and is governed entirely by Section 408 of the Internal Revenue Code and said if you do it this way, you don't have to pay taxes on the increase in value of the asset that is purchased with your retirement funds in that account. So what this is saying is that, as I read it, is that Apostolos directed Mrs. Boyd to go to Kingdom Trust. It doesn't reflect in any way that Kingdom Trust knew anything about this or had any connection with it. Section 55 says Apostolos, on behalf of Kingdom Trust, assisted Boyd in executing the document. And I agree. It does say that, Your Honor. We would submit that that is a legal conclusion, that it is a definition of agency, and there are no facts, and that's in the complaint that would support any relationship or any agency relationship in particular between Kingdom Trust and Apostolos. And, in fact, what we have demonstrated in our briefs is that these forms are available online on our website. And so anybody can go there, and anyone does. And whether it's Apostolos who goes there and finds the forms and gives them to Mrs. Boyd and helps her figure it out or whether Mrs. Boyd goes there herself, they're available online. Okay. Apparently no further questions. Thank you. Your turn, Mr. Byrd. Thank you. Just briefly, Your Honor. With respect to this idea that my clients just whole cloth found the self-directed IRA folks and decided to invest with them so that they could in turn invest with Apostolos, there's no way to make that determination based on what's before the court or what was before the district court. But as a practical matter, if you look at paragraphs 45, 46, and 47, to perpetrate the Ponzi scheme, including the sale of unregistered securities, Apostolos directed the plaintiffs to invest with these folks or to go to these companies. Now, I would submit that that's based on the anecdotal stories from many retired firefighters and police officers who were taken in this scheme that Mr. Apostolos directed them to go to all these folks. So to say that the seller of the securities was not involved with the third party, at this stage in the litigation, there's no basis for it. We have to be able to conduct discovery to flesh out what those relationships were. But certainly what's in the company. So if I tell you that I understand that you're going to have a big party and you need fresh seafood and the best place to get that is the local store on the corner, and I direct you and all of your fellow partiers to the local store to get really good salmon and you do that, that makes a relationship between me and the local store? Your Honor, I believe if there is a statute that says that you're responsible in aiding or participating in the sale of that salmon or that fish. I don't have any fish. I understand that. I don't have a store. I'm not having a party. I'm just saying they've got really good fish. I'm struggling with the idea that that creates a relationship, which is what your complaint says. I understand your struggle. At this point in the litigation under Rule 12, there's enough there, I think, to No, it has to be plausible. I understand it has to be plausible. And I believe, Your Honor, that with the contracts that are signed by Mr. Apostolos with the defendants, with the allegation that he brought the investors to the place, the vehicle that would allow them to put money, to get Apostolos' money, that they wouldn't otherwise know about. I mean, these are folks whose 401ks and pensions were from the police department and from the fire department, right? They're not sophisticated investors. So I think that it's perhaps a little bit of an oversimplification to compare it to, I think these guys have really good fish. You should go buy there. This was a very involved transaction that but for the defendants being involved and Apostolos bringing those folks together could never have happened. So they couldn't have invested with Mr. Apostolos without first putting their money with the self-directed IRAs. Thank you, Your Honor. Okay. Thank you, Mr. Davies. Thank you, counsel, the three of you for your arguments today. We really appreciate them. The case will be submitted. And you may adjourn court.